IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| Ethel THROWER, *et. al*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:08-CV-176 (MTT) |
| | ) |
| PEACH COUNTY, GEORGIA, BOARD OF EDUCATION, *et. al*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment (the "Motion") (Doc. 70). For the following reasons the Motion is **GRANTED** on the Plaintiffs' claims against Defendant Susan Clark; **DENIED** on Ethel Thrower and Sparkey Adams' Fair Labor Standards Act ("FLSA") claims; **GRANTED** on the remaining Plaintiffs' FLSA claims; **GRANTED** on Ethel Thrower and Sparkey Adams' retaliation claims; **GRANTED** on Pauline Livatt's breach of contract, *quantum meruit*, and unjust enrichment claims; and **DENIED** on the remaining Plaintiffs' breach of contract, *quantum meruit*, and unjust enrichment claims.

### I. FACTUAL BACKGROUND

The Plaintiffs filed their complaint against the Defendants May 24, 2008, asserting claims for violations of the FLSA and, by Thrower and Adams, claims for retaliation because of their assertion of FLSA rights (the "Complaint") (Doc. 1). The Plaintiffs named the Peach County Board of Education, Dr. Norma Givens, Kay Whitley, Jamie Johnson, Wright Peavy, Jody Usry, and Superintendent Susan Clark as Defendants. The parties filed a proposed order which was subsequently entered

stipulating the proper Defendants were the Peach County School District ("PCSD") and Superintendent Clark (Doc. 18).  The Plaintiffs filed a supplemental complaint May 4, 2009, adding breach of contract, *quantum meruit*, unjust enrichment, and attorney's fees claims (Doc. 43).

This matter arises from the Plaintiffs' claims for back pay from the PCSD.  There are eleven Plaintiffs: Ethel Thrower, Edna Mitchell, Janet Mullis, Douglas Hardison, Sparkey Adams, Dorothy McKenzie, Jackie Brown, Pauline Livatt, Betsy Thistlewood, Willie Frank Brown, and Rachael Wright.  The Plaintiffs are or were employed as bus drivers and bus monitors with the PCSD.  Bus monitors maintain order on the buses, especially on routes with special-needs students.  In addition to running their routes, bus drivers and bus monitors are required to perform pre-trip and post-trip duties, including, but not limited to, washing, fueling, and cleaning the buses.  Failure to maintain a clean bus would result in a reprimand.

Before the 2006-2007 school year, the Plaintiffs used the "honor system" to keep track of their working hours.  However, in October 2006, Transportation Director Anthony Jackson instituted a salary schedule whereby bus drivers and monitors received a base salary and an experience or longevity supplement based on four hours pay each day and a two-hour supplement if they had a third route.  The PCSD created the schedule after conducting a study of the routes and concluding that routes should take 1.5 to 2 hours to complete.   The salary schedule for the 2007-2008 school year displayed the annual and hourly salaries for bus drivers and monitors.  The revised salary schedule did not include a third route supplement.

The Plaintiffs believed the salary schedules did not properly compensate them for all of their work-related activities. Some Plaintiffs, such as J. Brown and Thistlewood, were told by Jackson not to include pre- or post-trip activities on their time sheets because they would not be compensated for such work. In addition, bus drivers, such as Mullis, contend they were not paid to attend the annual safety meeting. The Plaintiffs also suggest foul play because they were instructed not to repeatedly write the same start time on time sheets, even if it was their actual start time. Jackson stated that for an employee beginning work at 6:00 am every day, he would suggest the employee write 6:00, 5:59, and 6:01 on this time sheet. The Defendants claim any time spent performing pre- or post-trip activities was *de minimis*. The Defendants also contend bus drivers were compensated for attending the annual safety meeting because they were scheduled to work 181 days instead of 180 days like bus monitors.

The Plaintiffs essentially raise two arguments: They worked more than four hours each day and/or they were not compensated for pre- and post-trip activities. The contentions of each Plaintiff and the Defendants' response are:

- Thrower claims she worked 9.5 hours each day, and although she was paid $3,415.16 in back pay, she claims she is owed an additional $1,822.17 because she was not compensated at the overtime pay rate. The Defendants contend Thrower is not entitled to additional payment because her calculations include fueling the bus which is not compensable, and the training session, which is built into the 181-day bus driver school year.

- Adams alleges she worked between 7 ¼ and 7 ¾ hours each day. Although she was paid $2,694.23 in back pay, Adams contends she is owed $713.07 based on

her hourly rate of $13.74 per hour.[1] The Defendants contend that from October 2006 until she was terminated in March 2007, Adams only exceeded a 40 hour work week four times.[2] The Defendants also argue Adams' overtime hours were *de minimis*.

- Mitchell alleges that she worked an average of 4.5 hours each day and that she was underpaid by $1,472.21 per year. The Defendants reference Mitchell's time sheets to point out she knew how to properly record fueling time.

- Mullis alleges that she worked an average of 5.5 hours each day and that she was underpaid by $4,420.70. Citing Mullis' deposition, the Defendants argue that Mullis admitted she was properly paid for the work on her time sheets and that she did a good job recording her time. The Defendants also note Mullis was provided extra pay in her paycheck.

- Hardison alleges that he worked an average of 4.25 hours each day and that he was underpaid by $728.70. The Defendants respond that Hardison confirmed he had not worked in excess of the time on his sheets and understood that he had to accurately record his time to get paid.

- McKenzie alleges that she worked an average of 4.5 hours each day and that she was underpaid by $1,147.24. The Defendants contend that McKenzie has exaggerated her hours and that her time sheets contained undocumented time.

---

[1] Although Adams claims she worked approximately 7 ¼ to 7 ¾ hours each day, she calculated her hours based on an 8-hour work day. Adams claims that she is entitled to overtime pay, but does not calculate these wages.
[2] The hours were 40:55, 40:10, 40:25, and 41:04.

The Defendants also contend McKenzie had seven, not nine, years of experience as a bus driver as of the 2007-2008 school year.

- J. Brown alleges she worked an average of 4 hours each day. J. Brown did not include time spent fueling and cleaning her bus on time sheets because Jackson informed her that those duties were not compensable. She alleges she was paid $596.08 less than she should have received due to the salary schedule. The Defendants point out that the Plaintiffs made a calculation error and that Thistlewood is entitled to only $11,743.28. The Defendants allege that her six to eight minutes per week spent fueling her bus were *de minimis*.

- Livatt alleges she worked an average of 4 hours each day. Livatt was scheduled to earn $924.31 per month, but her actual salary was $930.59 per month. Nevertheless, Livatt claims she should be compensated for the time spent cleaning and sweeping her bus. The Defendants contend Livatt generally recorded between 4.5 and 12.25 hours per week and there is no evidence that she worked more than twenty hours each week.

- Thistlewood alleges she worked an average of 4 hours each day and claims she should have been paid $12,392.08, but does not specify the amount she was underpaid. The Defendants point out that the Plaintiffs made a calculation error and that Thistlewood is entitled to only $11,743.28. To the extent she argues that she is entitled to more, the Defendants argue that there is no evidence Thistlewood worked more than twenty hours each week.

- W. Brown alleges he worked an average of 4.5 hours each day and claims he was underpaid by $1,431.68. The Defendants contend Brown's time sheets do not indicate that he worked more than twenty hours per week.

- Wright alleges she worked an average of 4.25 hours each day and claims she was underpaid by $829.92. She also alleges she received less than she should have received due to the salary schedule. The Defendants contend Wright, a bus monitor, was properly paid because she was in her sixth year during the 2006-2007 school year and was paid the corresponding rate. The Defendants also argue Wright is not entitled to be compensated for the time when her bus driver, Wendy Barbour, performed pre-trip duties.

In addition to their wage claims, Thrower and Adams claim they were fired in March 2007 in retaliation for asserting their FLSA rights. The Defendants did not have a formal method of keeping records until Jackson implemented the salary schedule in October 2006. The Plaintiffs claim they were not adequately compensated before the schedule and sought back pay from the Defendants. In December 2006, the Defendants paid Thrower and Adams $3,415.16 and $2,694.23, respectively, in back pay. Thrower and Adams were later terminated March 15, 2007 after an alleged incident March 8, 2007. Thrower and Adams offer no direct or circumstantial evidence that the assertion of their FLSA claims motivated the termination of their employment other than the temporal proximity between the two events.

Defendants contend Thrower and Adams were fired for misconduct relating to the March 2007 incident. Defendants contend a parent told the PCSD that her special needs child was not picked up from school. The bus driver for that route, Thrower, and

the assigned bus monitor, Adams, were instructed to turn around and pick up the student. Thrower and Adams complied with the demand.

The next day, Thrower and Adams both called in sick and Jackson and a PCSD district mechanic had to run the route in their absence. Jackson was unable to find the route and student information on the bus. Jackson testified that he pulled the videotape from the previous day and saw Thrower and Adams plot to skip work and impermissibly remove the route information and student list out of spite for having to return to pick up the student. Jackson and C.B. Mathis, Assistant Superintendent, also testified that they saw Adams sit on the special-needs child. Thrower and Adams were both terminated March 15, 2007.

Thrower and Adams claim they missed work because they were sick and deny they sabotaged the route. Thrower and Adams also argue the stated reason for their termination was pretextual.

With regard to the Plaintiffs state law claims, the Defendants argue that the Plaintiffs cannot prevail on a breach of contract theory because they are at-will employees. The Plaintiffs claim the salary schedule contained in the Classified Employee Handbook ("Handbook") created an enforceable contract. The Defendants' motion and briefs do not address the Plaintiffs' remaining state law claims.

## II.     DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c). "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). The burden rests with the moving party to prove that no genuine issue of material facts exists. *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224. The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor." *Id.*

**B.     Defendant Susan Clark**

The Defendants contend, correctly, that Susan Clark is not a proper party to this action. In *Busby v. City of Orlando*, the Eleventh Circuit held that a suit against a public entity and an official acting in his official capacity is redundant. 931 F.2d 764, 776 (11th Cir. 1991). Although *Busby* dealt with a 42 U.S.C. § 1983 claim, the reasoning has been applied in the FLSA context. *Bean v. Fulton Cnty. Sch. Sys.*, 2008 WL 515007, at *2 (N.D. Ga. Feb. 22, 2008). Here, the Plaintiffs have named the school district and the superintendent as defendants. The Plaintiffs defend on the ground that the parties entered a stipulation that Clark and the PCSD are the proper parties to the suit. Although stipulations will generally be upheld, a stipulation to a question of law is not binding on the court. *Noel Shows, Inc. v. United States*, 721 F.2d 327, 330 (11th Cir. 1983). The issue of whether Clark may be sued in her official capacity when the district is a party is a question of law. *Bean* makes it clear that the Plaintiffs may not sue both the PCSD and Clark. Because the Plaintiffs sued both the public entity and an official in her official capacity, the Motion should be granted in favor of Defendant Clark.

**C. The "Nonovertime" Plaintiffs' FLSA Claims**

With the exception of Thrower and Adams, no Plaintiff contends he or she worked overtime. Nor does any nonovertime Plaintiff claim he or she received less than minimum wage for hours worked. Rather, the nonovertime Plaintiffs claim they should be paid their regular hourly rate for the time they worked in excess of their scheduled hours. In the wage and hour world, this time between scheduled hours and overtime hours is known as "pure gap time." The PCSD contends that the nonovertime Plaintiffs are not entitled to FLSA relief for "pure gap time."

Although there is little direct authority, the few cases addressing gap time have acknowledged that FLSA provides no remedy for a worker who has received at least minimum wage for his or her nonovertime hours, even though they may have been paid less than their actual hourly rate. In *Davis v. City of Loganville*, 2006 WL 826713, at *9 (M.D. Ga. Mar. 28, 2006), this Court recognized "the widely-accepted rule of law that employers are not obligated under the FLSA to compensate employees for 'gap time,' as long as the employees receive at least the statutory minimum wage for all nonovertime hours worked." Rather, FLSA only governs minimum wage and overtime pay violations. Even though an employer may have breached an employment contract by paying a worker less than an agreed hourly wage, the worker has no FLSA remedy if he has received at least the minimum wage. A worker is entitled to gap time compensation only when the worker's hours cross the overtime threshold. *Monahan v. Cnty. of Chesterfield, Vir.,* 95 F.3d 1263, 1273 (4th Cir. 1996).

The Plaintiffs cite *Schmitt v. Kansas*, 844 F. Supp. 1449 (D. Kan. 1994) (*Schmitt I*) for the proposition that pure gap time claims are compensable. The district court in

*Schmitt I*, although recognizing the "considerable body of authority" favoring a contrary conclusion, ruled that what it called "straight time" claims could be compensable, based on what the court called the Tenth Circuit's "holding" in *Lamon v. City of Shawnee*, 972 F.2d 1145 (10th Cir. 1992), *cert denied*, 507 U.S. 972 (1993). Interestingly, *Lamon* did not analyze the gap time issue or cite any authority regarding the issue but simply, with regard to that particular issue, affirmed "for the reasons expressed in the district court's opinion." 972 F.2d at 1155. The district court opinion in *Lamon* was penned by the same district judge who wrote *Schmitt I*. *Schmitt*, *Lamon*, and a subsequent decision by the same district court judge in *Schmitt v. Kansas*, 864 F. Supp. 1051 (D. Kan. 1994) (*Schmitt II*), are discussed in more detail in the Fourth Circuit's decision in *Monahan v. Cnty. of Chesterfield, Va.*, 95 F.3d 1263 (4th Cir. 1996). The Fourth Circuit concluded that the Tenth Circuit's opinion in *Lamon* cannot be read as an unequivocal statement that claims for pure gap time are compensable under the FLSA. The reality is that the Tenth Circuit "authority" cited in *Schmitt I* is actually the opinion of a single district judge rejecting contrary authority as "unreasonable in view of the remedial purpose of FLSA" and finding that "the requirement that plaintiffs be paid compensation at their regularly hourly rate to be implicit in the framework of the FLSA." *Lamon*, 754 F. Supp. 1518, 1521 n.1. While that judge's opinion may yet prove to be correct, the clear weight and trend of authority, nearly twenty years later, is that pure gap time claims are not compensable.

Accordingly, the PCSD is entitled to summary judgment on the nonovertime Plaintiffs' FLSA claims.

**D.    "Overtime" Plaintiffs Thrower and Adams' FLSA Claims**

The PCSD contends that Thrower and Adams have not provided sufficient evidence they worked longer than 40 hours a week. Citing primarily *Allen v. Board of Public Educ. for Bibb Cnty.*, 495 F.3d 1306 (11th Cir. 2007), Thrower and Adams argue they have presented sufficient evidence to withstand summary judgment, particularly given that any deficiencies in documentation are the result of the PCSD's failure to maintain required records.

In *Allen*, bus drivers and bus monitors brought a FLSA action against the Board of Public Education for Bibb County to recover unpaid wages. The plaintiffs lacked substantial proof they worked overtime, but argued that their supervisors often told them they would not be compensated for working overtime and instructed them not to report overtime on their time sheets. *Id.* at 1316. The district court granted summary judgment in favor of the defendant because of the plaintiffs' inability to prove the overtime hour they worked. *Id.* at 1314.

The Eleventh Circuit reversed. The Court acknowledged that "Plaintiffs must prove that they were suffered or permitted to work without compensation." *Id.* at 1314 (summarizing 29 U.S.C. § 201 *et seq.*). The Court further acknowledged that FLSA requires (1) sufficient evidence the employee worked overtime without compensation and (2) actual or constructive knowledge of the work by the employer. *Allen*, 495 F.3d at 1314-15. However, the Court held that employees' approximations of hours worked were sufficient to create an issue of fact because it is an employer's duty to keep records of wages and hours, and employees seldom keep records themselves. *Id.* at 1315. Thus, employees only have the burden of providing "'sufficient evidence to show

the amount and extent of that work as a matter of just and reasonable inference.'" *Allen*, 495 F.3d at 1316 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

Thrower and Adams have come forward with sufficient evidence of their overtime hours to withstand summary judgment. The record contains weekly time sheets from both Thrower and Adams documenting more than forty hours worked. Both testified the work they performed during overtime hours was work regularly performed by bus drivers and bus monitors. Specifically, they claim they were not compensated for time spent running routes, fueling, and cleaning their bus. Therefore, a reasonable jury could find Thrower and Adams worked more than forty hours a week.

The PCSD had actual knowledge Thrower and Adams worked longer than the salary schedule provided. Weekly time sheets document several weeks in which they worked more than 40 hours. Because the PCSD knew time sheets beyond forty hours were submitted, it had actual notice that Thrower and Adams worked overtime.

The PCSD argues, however, that Adams' four time sheets reflect *de minimis* overtime, and cite *Anderson*, 328 U.S. at 692, for the proposition that *de minimis* work is not compensable under the FLSA. In *Anderson*, the Supreme Court held that preliminary activities such as putting on aprons, removing shirts, turning on switches, and opening windows are "clearly work" because "they involve exertion of a physical nature, controlled or required by the employer and pursued necessarily and primarily for the employer's benefit." *Id.* at 693. An employer, however, is not required to pay employees for *de minimis* time performing compensable preliminary activities. *Id.* The Court made a distinction between *de minimis* and compensable work, stating:

> When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. … It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*Id.* at 692.

The alleged uncompensated activities in this action are compensable because the activities were required and pursued necessarily and primarily for the employer's benefit. The real issue is whether Adams' time spent performing these duties was *de minimis*. While Adams submitted time sheets that were only a few seconds or minutes of work beyond the scheduled working hours, she also submitted time sheets greater than 50 minutes a week or 10 minutes a day in excess of the overtime threshold. Because the Court cannot rule Adams' hours *de minimis* as a matter of law, summary judgment on Adams' FLSA claim is inappropriate.[3]

The Portal-to-Portal Pay Act also supports paying Adams for preliminary and postliminary activities. One year after the Supreme Court's decision in *Anderson*, Congress passed the Portal-to-Portal Pay Act, 29 U.S.C. § 254. Section 254(a)(2) provides that employees may not be compensated for performing preliminary or postliminary activities. Section 254(b), however, allows employees to be compensated if the work is based on an express provision of a written contract, nonwritten contract, or custom. Here, there is evidence that the preliminary and postliminary activities were an express nonwritten provision of an employee contract or custom because the PCSD

---

[3] While it may not be *de minimis* legally, as a practical matter, the Court is aware that Adams' claim may involve only four shifts of less than two hours total overtime.

expected buses to be cleaned and formally reprimanded employees for failing to maintain a clean bus.

According the PCSD's Motion for Summary judgment on Thrower and Adams' FLSA claims is denied.

**E.     Thrower and Adams' Retaliation Claims**

An employee may not be terminated for asserting FLSA rights.  29 U.S.C. § 215(a)(3).  To establish a prima facie case of retaliation under the FLSA, a plaintiff must demonstrate that "(1) she engaged in activity protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000) (quoting *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208-09 (10th Cir. 1997)).  A causal connection means "the plaintiff must prove that the adverse action would not have been taken 'but for' the assertion of FLSA rights."  *Wolf*, 200 F.3d at 1343 (summarizing *Reich v. Davis*, 50 F.3d 962, 965-66 (11th Cir. 1995)).  If the employee asserts a prima facie case, the employer must assert a legitimate reason for the adverse action.  *Id*.  The employee must then establish that the defendant's proffered reason was pretextual.  *Id*.

Thrower and Adams complained about back pay in October 2006 and were terminated in March 2007.  The Plaintiffs cite *Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554, 1566 (11th Cir. 1995) for the proposition that, in the Eleventh Circuit, a causal connection can be found even though a full year elapses between the assertion of FLSA rights and the employee's termination.  In *Beckwith*, however, the Eleventh Circuit's reasoning was based on a "sequence of events

culminating in [the plaintiff's] termination." *Id.* In the Eleventh Circuit, "a lapse in time of several months, in the absence of other evidence tending to show causation, is insufficient." *Allen v. U.S. Postmaster Gen.*, 158 Fed. Appx. 240, 244 (11th Cir. 2005).

Here, Thrower and Adams attempt to show causation based solely on a temporal proximity of five months. To establish a causal connection based solely on temporal proximity, the events must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In *Breeden*, the Supreme Court cited with approval circuit court decisions holding that temporal proximities of three and four months, standing alone, were insufficient to establish a temporal connection. *Id.* While *Breeden* was a Title VII employment case, the Eleventh Circuit applied the "very close" rule in a non-civil-rights employment case. See, *Cobb v. TSI Telecomm. Servs., Inc.*, 172 Fed. Appx. 293, 294 (11th Cir. 2006), *Embry v. Callahan Eye Foundation Hosp.,* 147 Fed. Appx. 819 (11th Cir. 2005).

Here, unlike in *Beckwith*, Thrower and Adams do not allege a series of events leading to their termination. Rather, they allege one adverse action–their termination– and contend that a temporal connection of five months is sufficient to create a jury issue on whether the PCSD terminated them for asserting their FLSA rights. Because five months between events is not "very close" and there is no other evidence suggesting the requisite causal connection, no reasonable jury could find the Defendants retaliated against Thrower and Adams.

Accordingly, the Motion should be granted on Thrower and Adams' retaliation claims.

**F.     Thrower and Adams' Claims for Declaratory or Injunctive Relief**

The Complaint seeks declaratory and injunctive relief. Although Thrower and Adams' FLSA claims survive, they may not seek a declaratory judgment from this Court because the Administrator of the Wage and Hour Division of the Department of Labor ("Administrator") is charged with determining whether an employer has violated the FLSA. 29 U.S.C. § 211(a). Further, Thrower and Adams may not seek injunctive relief because the Administrator must bring an action for injunctive relief except in child labor cases. *Id*. The power to bring an action for injunctive relief under the FLSA rests exclusively with the Secretary of Labor. *Powell v. State of Fla.,* 132 F.3d 677, 678 (11th Cir. 1998).

Accordingly, Thrower and Adams' claims for declaratory and injunctive relief must be dismissed.

**G.     The Plaintiffs' State Law Claims**

The Plaintiffs' Supplemental Complaint asserts claims for breach of contract (Count III) and *quantum meruit* and unjust enrichment (Count IV). The PCSD's Motion for Summary Judgment and supporting briefs do not address the Plaintiffs' *quantum meruit* and unjust enrichment claims, and therefore the Court makes no ruling on those claims, except, as explained below, with regard to Plaintiff Livatt's claims.

With regard to the Plaintiffs' breach of contract claims, the parties' briefs are not particularly helpful. The Plaintiffs claim the PCSD breached their employment contracts by not paying them their hourly wage for work they actually performed. The PCSD responds that the Plaintiffs have no contracts because they are at-will employees and that employee handbooks, for at-will employees, do not create an enforceable contract.

Following the PCSD's lead, the Plaintiffs cite *Fulton-DeKalb Hosp. Auth. v. Metzger*, 203 Ga. App. 595, 417 S.E.2d 163 (1992), for the proposition that in some circumstances an employee handbook may create a contract enforceable by at-will employees. However, *Metzger* appears to be limited to provisions of employee handbooks providing benefits other than wages, such as the disability benefits at issue in *Metzger*, or vacation pay (*Shannon v. Huntley's Jiffy Stores, Inc.*, 174 Ga. App. 125, 329 S.E.2d 208 (1985)), or severance pay (*Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 288 S.E.2d 49 (1981)). It is doubtful that an employee handbook could ever create a contractual obligation to continue employment and a concomitant obligation to pay wages for that continued employment. The heart of the at-will employment doctrine is that an employee cannot bring an action for wrongful termination. *Fink v. Dodd*, 286 Ga. App. 363, 365-66, 649 S.E.2d 359, 361-62 (2007).

That, however, is not the Plaintiffs' claim. They allege they were not paid for work they performed. They are not claiming the PCSD is obligated by contract to continue their employment or to pay wages for time they did not work. Clearly, if the Plaintiffs worked, they are entitled to be paid for their work at the agreed upon rate. *Walker Elec. Co. v. Byrd*, 281 Ga. App. 190, 635 S.E.2d 819 (2006). Therefore, with the exception of Plaintiff Livatt, the PCSD is not entitled to summary judgment on the Plaintiffs' breach of contract claims.

With regard to Plaintiff Livatt, the undisputed facts establish that Livatt has not shown that she was undercompensated. On the contrary, Livatt admits she was paid more than the earnings she is claiming. Accordingly, the PCSD is entitled to summary judgment with regard to Livatt's breach of contract claim and, on its own motion, the

Court enters summary judgment in favor of the PCSD on Livatt's claims asserted in Count IV of the Supplemental Complaint

Although the PCSD did not move for summary judgment on the Plaintiffs' claims for *quantum meruit* and unjust enrichment, it is nonetheless appropriate to note that these theories of recovery are in the alternative to the Plaintiffs' claims for breach of contract. Thus, if, in fact, the Plaintiffs were not compensated for work they actually performed, they would be entitled to compensation under Count III or Count IV, but not under both counts.

### III. CONCLUSION

The Motion is **GRANTED** in favor of Defendant Clark with respect to all Plaintiffs on all claims. With respect to the PCSD, the Motion is **DENIED** on Thrower and Adams' FLSA claims; **GRANTED** on the remaining Plaintiffs' FLSA claims; **GRANTED** on Thrower and Adams' retaliation claims; **GRANTED** on Livatt's breach of contract, *quantum meruit*, and unjust enrichment claims; and **DENIED** on the remaining Plaintiffs' breach of contract, *quantum meruit*, and unjust enrichment claims.

**SO ORDERED**, this the 2nd day of November, 2010.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT